UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JUDE DARRIN,                       No. 2:12-cv-00228-MCE-KJN

     Plaintiff,

  v.                             <u>MEMORANDUM AND ORDER</u>

BANK OF AMERICA, N.A.

     Defendant.

----oo0oo----

Before the Court is Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF No. 7) ("MTD").[1] For the reasons that follow, Defendant's Motion to Dismiss is GRANTED with leave to amend.

///
///
///

---

[1] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 230(g).

1

**BACKGROUND**[2]

In 2004, Plaintiff Jude Darrin ("Darrin") states she refinanced her mortgage through Countrywide. (Compl. ¶ 9.) At that time, her mortgage payments were approximately $800 a month. (Id.) Darrin does not state where the property was located or provide any details as to the terms of the refinanced mortgage.[3]

In 2009, Darrin alleges that Defendant Bank of America "took over" Countrywide and that by 2009, her mortgage payments had increased to nearly $1,100 a month. (Id.) At that time, Darrin applied for a loan modification through the federal Home Affordable Modification Program ("HAMP") in order to get her monthly payments lowered. (Id. at ¶ 10.) Darrin's modification request was directed to Bank of America for processing and approved after several months. (Id.)

In December 2009, Darrin began a "trial period" with Bank of America in which she received "payment coupons" in the amount of $675.87 each to use for the months of December 2009 through March 2010. (Id.) In April 2010, Darrin sent a payment of $675.87 to Bank of America. (Id. at ¶ 11.)

///
///
///

---

[2] The following facts are taken from Plaintiff's Complaint (ECF No. 1) ("Compl.") For the purposes of this Motion, the Court accepts Plaintiff's facts as true and makes all inferences in the light most favorable to Plaintiff.

[3] Darrin also does not attach any exhibits to her Complaint, such as the relevant mortgage documents.

2

1  A few days later, Darrin "heard" from Bank of America that she
2  was approved for a permanent loan modification set at $790.10.[4]
3  (Id.)  She was also told not to send payment for April, but had
4  already done so. (Id.)  She then called Bank of America and was
5  allegedly told by an employee with the bank that she should send
6  in the $114.23 difference between her payment and the modified
7  amount. (Id.)

8  Darrin asserts that she has made all of her mortgage
9  payments on time, both to Countrywide and to Bank of America.
10 (Id. at ¶ 13.)  However, in the summer of 2011, Darrin checked
11 her credit report and found that Bank of America was reporting
12 her mortgage late to credit agencies during the months of June
13 2011 and November 2009 through September 2010. (Id. at ¶ 15.)

14 Darrin states she was unaware of her allegedly late
15 payments. (Id.)  She asserts that she never received any
16 notification from Bank of America that she was late on any
17 payments. ( Id.)  Darrin also alleges that she received credit
18 under the "Pay for Performance" program, which rewards
19 individuals for paying mortgages on time by giving credit to pay
20 down principal. (Id. at ¶ 11.)

21 On or about September 15, 2011, Darrin wrote a letter to
22 Bank of America asking them to contact the credit agencies which
23 they had reported her to in order to get the late payment
24 misinformation corrected. (Id. at ¶ 16.)  She then sent an email
25 to the CEO and President of Bank of America.
26 ///
27
28     [4] Darrin does not provide any information about who communicated with her or the means of communication used.

3

On September 27, she states that she was contacted by a "customer advocate" for Bank of America, who allegedly promised to "fix things." (Id.)

When Darrin did not hear back from the "customer advocate," she called Bank of America and spoke with an employee who advised her that her May 2010 payment was late because it had not been received until June 4, 2010. (Id. at ¶ 18.) Thereafter, Darrin spoke almost daily with Bank of America, for an indeterminate amount of time, trying to correct the alleged payment errors. (Id. at ¶ 19.) She claims she was repeatedly told that the errors would be corrected, but they never were. (Id.)

On or about September 15, 2011, Darrin sent a complaint and request for investigation to each of the three credit agencies. (Id. at ¶ 20.) Each credit agency thereafter advised her that Bank of America had confirmed the late payment information. (Id.) Darrin sent another letter to the three agencies in October, 2011, but again received the same response. (Id. at ¶ 28.) Darrin contends that as a result of the errors, she could not obtain a home loan until the credit reports were fixed. (Id. at ¶ 21.)

On or about September 27, 2011, Darrin filed a customer complaint with the Office of the Comptroller of the Currency ("OCC"), which detailed her issues with Bank of America and the credit reporting agencies. (Id. at ¶ 22.) The next day, she wrote a letter to Bank of America again, demanding written documentation that she had been late on her mortgage payments. (Id. at ¶ 23.) Bank of America allegedly failed to provide her with the requested written documentation within sixty days. (Id.)

4

1    Darrin alleges that she couldn't get a particular home loan
2 she was seeking as a result of Bank of America's errors and that
3 she also experienced various emotional and psychological
4 repercussions. (Id. at ¶¶ 26, 29, 30, 31,and 32.)
5    In October of 2011, Darrin contends that she again engaged
6 in a series of communications with Bank of America regarding the
7 allegedly late payments, as well as her complaint to the OCC.
8 (Id. at ¶¶ 33-36.)  During the course of these communications, a
9 Bank of America employee stated that the May 2010 payment had
10 been misapplied to Darrin's principal, rather than applied as a
11 mortgage payment, and discussed the process for correcting this
12 issue with her.  (Id. at ¶¶ 35, 36.)  The employee advised Darrin
13 that to correct the payment, Bank of America would need to send
14 her check (which Darrin would then deposit and send her own check
15 back to Bank of America for the same amount), but advised Darrin
16 that she would need to send them a completed Internal Revenue
17 Service ("IRS") Form W-9 before they could do so.  (Id. at ¶ 35.)
18 Darrin balked at this requirement, out of concern that the check
19 sent by Bank of America would be construed as income by the IRS.
20 (Id. at ¶ 36.)
21    In November 2011, Bank of America apparently advised the
22 three credit reporting agencies that the May 2010 payment error
23 had been corrected.  (Id. at ¶ 37.)  However, Darrin received a
24 letter from Bank of America that advised her because she had not
25 sent the Form W-9 in, her account would continue to show as past
26 due.  (Id. at ¶ 38.)
27 ///
28 ///

5

1  Further, the letter stated Darrin's account had been delinquent
2  since May 2010 and because the bank had not received all of
3  Darrin's 2010 payments on the first of the month, she had not,
4  and would not, receive credit for the "Pay for Performance" plan.
5  (Id. at ¶¶ 38-40.)  Darrin disputes this statement and asserts
6  she then sent the bank a letter requesting an itemized statement
7  of her mortgage, along with an explanation of all the data.  (Id.
8  at ¶¶ 39, 41.)  She contends that in 2011, she received a report
9  from Equifax, one of the three credit reporting agencies, that
10 continued to erroneously show late payments.  (Id. at ¶ 42.)
11      Then, in January, 2012, she received a "Notice of Intent to
12 Accelerate" letter from Bank of America.  (Id. at ¶ 43.)  This
13 letter stated that her loan was in default because, as of
14 December 2011, she was $1,617.04 behind in her payments.  (Id.)
15 The letter gave Darrin the right to cure the default by
16 February 16, 2012, or all further payments would be accelerated
17 making the full amount of the mortgage due.  (Id.)  Foreclosure
18 proceedings would then follow.  (Id.)  On January 26, 2012,
19 Darrin states she sent the check for $1,617.04 to Bank of
20 America.  (Id. at ¶ 45.)
21      On January 28, 2012, Darrin filed her Complaint in this
22 Court on the basis of federal question jurisdiction, with
23 supplemental jurisdiction over the state law claims.  (Id. at
24 ¶¶ 2, 3.) She raises one federal Claim for Relief: violations of
25 the Fair Credit Reporting Act, 15. U.S.C. § 1681s-2(b), and the
26 following state law claims:
27 ///
28 ///

6

1  (1) violations of California's Consumer Credit Reporting Agencies
2  Act, California Civil Code ("Cal. Civ. Code") § 1785.1 et seq;
3  (2) violations of the Rosenthal Act, Cal. Civ. Code § 1788 et
4  seq.); (3) violations of the California Consumers Legal Remedies
5  Act, Cal. Civ. Code § 1750, et seq.); (4) violations of
6  California Business and Professions Code § 17200, et seq.);
7  (5) defamation; (7) intentional infliction of emotional distress;
8  (8) negligent infliction of emotional distress; and
9  (9) conversion.  (Compl. at pages 15-26.) Darrin seeks
10 compensatory, statutory, and punitive damages, as well as
11 injunctive relief, fees and costs, and any other relief the Court
12 deems just and proper.

## STANDARD FOR 12(b)(6) MOTION TO DISMISS

16      On a motion to dismiss for failure to state a claim under
17 Rule 12(b)(6), all allegations of material fact must be accepted
18 as true and construed in the light most favorable to the
19 nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,
20 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and
21 plain statement of the claim showing that the pleader is entitled
22 to relief" in order to "give the defendant fair notice of what
23 the. . . claim is and the grounds upon which it rests." Bell
24 Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal
25 citations and quotations omitted).
26 ///
27 ///
28 ///

7

Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted). A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level. Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal citations omitted).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009). If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Rule 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, .

8

. . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  Leave to amend is generally denied when it is clear the deficiencies of the complaint cannot be cured by amendment.  <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992); <u>Balistieri v. Pacifica Police Dept.</u>, 901 F. 2d 696, 699 (9th Cir. 1990) ("A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

**ANALYSIS**

**A.   First Claim for Relief: Violations of the Fair Credit Reporting Act, 15. U.S.C. § 1681s-2(b)**

   **1.   Parties' Contentions**

   For her First Claim for Relief, Darrin claims that Bank of America violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), by failing and refusing to investigate or reinvestigate the disputed payment information after the credit reporting agencies notified the bank of the disputes.  (Compl. ¶¶ 47-50).  Darrin contends that Bank of America was obligated to conduct a reasonable, timely, and thorough investigation of the disputed amounts, but did not do so, causing Darrin damage to her credit, as well as various other damages and entitling her to various relief.  (<u>Id.</u> at ¶¶ 51-53.)
///

9

Bank of America's overarching argument is that Darrin has failed to allege enough specific facts about her particular mortgage to put it on notice of her claims. (MTD at pages 9-12.) Specifically, Bank of America asserts that Darrin has failed to specifically allege facts about the details of the property, the mortgage, the HAMP modification, or attach any documents that would provide the missing details. (Id.)

Regarding Darrin's FCRA claims, Bank of America contends that she has failed to sufficiently plead that the information reported to the credit agencies was false or inaccurate. (Id. at 12).

**2.   Analysis**

The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit." 15 U.S.C. § 1681(b). Section 1681s-2 states that companies shall not furnish information about a consumer to a credit reporting agency if they have reason to know, or do know, that the information is false. Id. § 1681s-2(a)-(b). The FCRA additionally requires that a plaintiff plead violations of the statute within two years of the date of the discovery, or within five years of the date "on which the violation that is the basis for such liability occurs." Id. § 1681p.

///
///
///
///

10

Here, Darrin has failed to plead facts indicating that Bank of America alone furnished the information that negatively impacted her credit, that any information that the bank did submit was false, or that Bank of America knew or believed such information was false at the time it submitted the information to the reporting agencies. While Darrin discusses Bank of America's correction of the May 2010 payment discrepancy, she does not provide sufficient facts for the Court to conclude that Bank of America knew, or had reason to know that the information was false. Furthermore, Darrin's allegation that Bank of America failed to investigate or reinvestigate the disputed amounts is insufficient and conclusory. Other than Darrin's underlying contention that all of her payments were timely, there is insufficient basis for the Court to conclude that Bank of America failed to investigate the disputed amounts.

In addition, the Court finds that the Complaint generally lacks the specificity for pleadings required under Rule 8(a), as interpreted by Iqbal and Twombly. Although Darrin details every communication she allegedly had with every Bank of America employee, she never sets forth her address, the terms of the mortgage, the details of the HAMP modification, or various other facts that would put Bank of America, and the Court, on notice as to the precise nature of her claims. See, e.g., Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' (quoting Twombly, 550 U.S. at 570)).

///

11

Because the Complaint lacks sufficient detail for either Bank of America or the Court to determine the precise nature of her claims, Darrin has thus failed to "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

Bank of America's Motion to Dismiss is therefore granted as to Darrin's FCRA claim.

### B.   State Law Claims

Having dismissed Darrin's federal claim, the Court determines that the Complaint presents no basis for federal question jurisdiction or for diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. The court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c), therefore all of Darrin's remaining claims are therefore dismissed as moot.

### CONCLUSION

As a matter of law, and for the reasons set forth above, Bank of America's Motion to Dismiss is GRANTED with leave to amend. Darrin shall file any amended complaint within twenty (20) days of the date this Order is filed electronically.

IT IS SO ORDERED.

1  Dated: July 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

13