UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----

JUDE DARRIN,

        Plaintiff,

   v.

BANK OF AMERICA, N.A.,

        Defendant.

No. 2:12-cv-00228-MCE-KJN

**MEMORANDUM AND ORDER**

----

Plaintiff Jude Darrin ("Plaintiff") seeks redress from Defendant Bank of America, N.A. ("Defendant") based on alleged violations of the Fair Credit Reporting Act. Plaintiff also seeks redress for multiple claims brought under California state law. Presently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 16.) Defendant's Motion was filed on August 13, 2012. Plaintiff filed a timely opposition on September 7, 2012. (ECF No. 17). For the reasons stated below, Defendant's Motion to Dismiss is GRANTED with leave to amend.[2]

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

## BACKGROUND[3]

In 2004, Plaintiff refinanced her mortgage for property located at 884 Waggoner Road, Paradise, California, through Countrywide.  At that time, her mortgage payments were approximately $800 per month.

In 2009, when Defendant acquired Countrywide, Plaintiff's mortgage payments increased to nearly $1,100.00 per month.  At this time, Plaintiff applied for a loan modification through the federal Home Affordable Modification Program ("HAMP") to get the monthly mortgage payments lowered.  Plaintiff alleges that on December 4, 2009, she received a letter from Defendant "directing" her to stop making her existing mortgage payments and to instead pay $675.87 beginning on that date.  Plaintiff made a payment in that amount to Defendant on or about December 7, 2009.

On December 28, 2009, Plaintiff received a Home Affordable Modification Period Plan Agreement ("Agreement") from Defendant, effective January 1, 2010.  Under the Agreement, Plaintiff agreed to pay $675.87 for the months of January through March 2010.  Plaintiff also received four "payment coupons" in the amount of $675.87 each, to use for the months of December 2009 through March 2010.  In April 2010, Plaintiff sent a payment of $675.87 to Defendant.

A few days after sending her payment, Plaintiff received a letter from Defendant dated April 1, 2010, approving a permanent loan modification set at $790.10.   Plaintiff alleges the letter instructed her to send no payment for April, but she had already done so.  The April 1 letter stated that the modification would become permanent beginning May 1, 2010, if Defendant received a signed and notarized agreement by April 11, 2010.  Plaintiff signed the Permanent Modification Agreement in front of a notary on April 8, 2010.

///

---

[3] The factual assertions in this section are taken from Plaintiff's First Amended Complaint.  (ECF No. 15.)

1  On May 1, 2010, Plaintiff paid $114.23—the difference between the original loan
2  modification and the new agreement—which posted on or about May 3, 2010.
3  Defendant signed the Permanent Modification Agreement on or about May 28, 2010.
4        Because Plaintiff had questions regarding the modification, she called Defendant
5  and was allegedly told by Defendant's employee that she should send in the $114.23
6  difference between her payment for April 2010 and the modified amount for May 2010.
7        Plaintiff asserts that she has made all of her mortgage payments on time, both to
8  Countrywide and to Defendant.  However, in the summer of 2011, when Plaintiff checked
9  her credit report, she found that Defendant was reporting her mortgage late to credit
10 agencies for the months of November 2009 through September 2010 and June 2011.
11       Plaintiff was unaware of any allegedly late payments and asserts that she never
12 received any notification from Defendant that she was late on any of her mortgage
13 payments.  Plaintiff also alleges that she received credit under the "Pay for Performance"
14 program, which rewards individuals for paying mortgages on time by giving credit to pay
15 down principal.
16       On or about September 15, 2011, Plaintiff wrote a letter to Defendant asking it to
17 contact the credit reporting agencies to get the late payment misinformation corrected.
18 She then sent an email to Defendant's CEO and President.  On September 27, Plaintiff
19 states she was contacted by a "customer advocate" for Defendant who allegedly
20 promised to "fix everything" within two business days.
21       When Plaintiff did not hear back from the "customer advocate," she called
22 Defendant and spoke with an employee who advised her that Defendant was correct in
23 its reporting to the credit agencies because her May 2010 payment had not been
24 received until June 4, 2010.  Subsequently, Plaintiff spoke almost daily with
25 representatives of Defendant, for an indeterminate amount of time, trying to correct the
26 alleged credit reporting errors.  Although Defendant repeatedly told Plaintiff that the
27 errors would be corrected, they never were.
28 ///

3

1  On or about September 15, 2011, Plaintiff sent a complaint and a request for
2  investigation to each of the three credit reporting agencies.  Each credit agency advised
3  her that Defendant had confirmed the late payment information.  Plaintiff sent another
4  letter to the credit reporting agencies in October 2011 but received the same response.
5  On or about September 27, 2011, Plaintiff filed a customer complaint with the
6  Office of the Comptroller of the Currency ("OCC"), which detailed her situation with
7  Defendant and the credit reporting agencies.  The next day, she wrote a letter to
8  Defendant, demanding written documentation showing that she had been late on her
9  mortgage payments.  While Defendant acknowledged receipt of her letter in a letter
10 dated November 4, 2011, Defendant allegedly failed to provide her with the requested
11 written documentation within sixty days.
12 Plaintiff alleges that she could not obtain a particular home loan because of
13 Defendant's credit reporting errors and experienced various emotional and psychological
14 repercussions as a result.
15 Plaintiff contends that in October of 2011, she engaged in a series of
16 communications with Defendant's representatives regarding the allegedly late payments
17 and the OCC complaint.  During these communications, Defendant's employee informed
18 Plaintiff that the May 2010 payment had been misapplied to the principal, rather than
19 being applied as a mortgage payment and discussed the process for correcting this
20 issue.  The employee advised Plaintiff that to correct the misinformation in her credit file,
21 Defendant would need to send Plaintiff her check, which Plaintiff would deposit, and the
22 Plaintiff would send her own check back to Defendant for the same amount.  However,
23 Defendant advised Plaintiff that she would need to send them a completed Internal
24 Revenue Service ("IRS") Form W-9 before they could start the process.  Plaintiff wrote a
25 letter to Defendant, informing the employee that she felt uncomfortable submitting the
26 W-9 because she did not want the check sent by Defendant to be construed as income
27 by the IRS.
28 ///

4

1          In November 2011, Plaintiff received a letter from Defendant advising her that the
2   May 2010 payment error had been corrected and that the corrected information had
3   been sent to the three credit reporting agencies.  However, Plaintiff received a letter from
4   Defendant dated November 21, 2011, advising her that because she had not sent the
5   W-9, her account would continue to show as past due.  Further, the letter stated that
6   Plaintiff had been delinquent since May 2010 and because Defendant had not received
7   all of her payments on the first of the month in 2010, Plaintiff had not, and would not,
8   receive credit for the "Pay for Performance" plan for 2011.  Plaintiff disputes this
9   statement and asserts that she had been receiving full credit for the "Pay for
10  Performance" plan throughout 2010 even though none of her payments for that year had
11  been received on the first day of the month.  Plaintiff contends that it was only after her
12  communication with Defendant about its reporting errors that she was informed that she
13  would no longer receive credit for her timely mortgage payments.  Plaintiff states she
14  sent Defendant a letter on or about November 22, 2011, requesting an itemized
15  statement of her mortgage, along with an explanation of all the data.  Plaintiff also
16  contends that in 2011, she received a report from Equifax that continued to erroneously
17  show late payments.
18          On or about January 23, 2012, Plaintiff received a "Notice of Intent to Accelerate"
19  from Defendant.  The notice stated that her loan was in default because, as of
20  December 2011, she was $1,617.04 behind in her payments.  The notice further stated
21  that Plaintiff had the right to cure the default by February 16, 2012, but that if the default
22  was not cured by that date, all future payments would be accelerated, making the full
23  amount of the mortgage due.  Foreclosure proceedings would then follow.  On
24  January 26, 2012, Plaintiff sent a check for $1,617.04 to Defendant and faxed the W-9 to
25  Defendant as well.  An employee of Defendant allegedly confirmed receipt of the W-9 by
26  leaving a phone message for Plaintiff.
27  ///
28  ///

5

Plaintiff states that in February 2012, she received a letter from Defendant confirming that it had corrected the credit misinformation to each of the three credit reporting agencies for the months of November 2009 through April 2010.

On January 28, 2012, Plaintiff filed a complaint in this Court on the basis of federal question jurisdiction with supplemental jurisdiction over the state law claims. (ECF No. 1.)  Defendant filed a Motion to Dismiss on March 9, 2012.  (ECF No. 7.)  The Court granted Defendant's Motion to Dismiss with leave to amend on July 9, 2012.  (ECF No. 14).  Plaintiff filed a First Amended Complaint ("FAC") on the same bases as the original complaint on July 24, 2012.  (ECF No. 15.)  Plaintiff alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), as her sole federal claim.  Plaintiff also brings the following state law claims: (1) violations of California's Consumer Credit Reporting Agencies Act, California Civil Code ("Cal. Civ. Code") § 1785.1 et seq.; (2) violations of the Rosenthal Act, Cal. Civ. Code § 1788 et seq.; (3) violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; (4) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (5) defamation; (6) intentional infliction of emotional distress; and (7) conversion. Plaintiff seeks compensatory, statutory, and punitive damages, as well as injunctive relief, fees and costs, and any other relief the Court deems just and proper.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).

6

1  Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require
2  detailed factual allegations, a plaintiff's obligation to provide the grounds of his
3  entitlement to relief requires more than labels and conclusions, and a formulaic recitation
4  of the elements of a cause of action will not do." Id. (internal citations and quotations
5  omitted). A court is not required to accept as true a "legal conclusion couched as a
6  factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,
7  550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the
8  speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.
9  Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (stating that the
10 pleading must contain something more than "a statement of facts that merely creates a
11 suspicion [of] a legally cognizable right of action")).
12     Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion,
13 of entitlement to relief. Without some factual allegation in the complaint, it is hard to see
14 how a claimant could satisfy the requirements of providing not only 'fair notice' of the
15 nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at
16 555 n.3 (internal citations and quotations omitted). A pleading must contain "only
17 enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also
18 Iqbal, 556 U.S. at 677-79. If the "plaintiffs . . . have not nudged their claims across the
19 line from conceivable to plausible, their complaint must be dismissed." Twombly,
20 550 U.S. at 570; Iqbal, 556 U.S. at 680.
21     A court granting a motion to dismiss a complaint must then decide whether to
22 grant leave to amend. Rule 15(a) empowers the court to freely grant leave to amend
23 when there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . .
24 undue prejudice to the opposing party by virtue of allowance of the amendment, [or]
25 futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). Dismissal
26 without leave to amend is proper only if it is clear that "the complaint could not be saved
27 by any amendment."
28 ///

7

1  Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re
2  Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co.,
3  866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment
4  of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A.  Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)

Plaintiff's first cause of action alleges that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), by failing and refusing to investigate or reinvestigate the disputed payment information after the credit reporting agencies notified Defendant of the disputes.  (ECF No. 15 at 15.)  Plaintiff contends that Defendant was obligated to conduct a reasonable, timely and thorough reinvestigation of the disputed amounts but failed to do so, causing damage to Plaintiff's credit, as well as various other damages.  (Id. at 15-16.)

The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit."  15 U.S.C. § 1681(b).  Section 1681s-2 states that companies shall not furnish information about a consumer to a credit reporting agency if they have reason to know, or do know, that the information is false.  Id. § 1681s-2(a)-(b).  The FCRA also requires that a plaintiff plead violations of the statute within two years of the date of the discovery, or within five years of the date "on which the violation that is the basis for such liability occurs."  Id. § 1681p.

Here, Plaintiff's FAC attempts to cure some of the deficiencies identified by the Court in its prior order dismissing Plaintiff's Complaint.  (See ECF No. 14.)

///
///
///

8

There, the Court identified numerous deficiencies in Plaintiff's pleadings, including the failure to plead facts indicating that Defendant alone furnished the information that negatively impacted Plaintiff's credit; that the information Defendant submitted to the credit reporting agencies was false; and that Defendant knew, believed, or had reason to know that such information was false at the time they submitted it to the credit reporting agencies. (Id. at 11.) The Court also noted that Plaintiff's allegation that Defendant failed to investigate or reinvestigate the disputed amounts was insufficient and conclusory and held that Plaintiff failed to comply with the pleading requirements of Rule 8(a). (Id.)

Plaintiff's FAC is not substantively different from the original Complaint. Plaintiff now identifies the subject property address (ECF No. 15 at 2), and the loan number from her application for a loan modification (id. at 3). Plaintiff has also included letters from Defendant relating to the trial modification agreement, a copy of the Home Affordable Modification Period Plan Agreement from Defendant, and letters regarding Plaintiff's requests for credit reporting adjustment as exhibits to the FAC.

However, these changes fail to cure the deficiencies noted by the Court in its prior order. Plaintiff has still failed to plead facts indicating that Defendant alone furnished the information that negatively impacted her credit, or that any information that the bank did submit was false. Furthermore, Plaintiff again fails to provide sufficient facts for the Court to conclude that Defendant knew, or had reason to know, that the information was false. Plaintiff's allegation that Defendant failed to investigate or reinvestigate the disputed amounts remains conclusory and therefore insufficient. Importantly, Plaintiff has still not pled any additional facts in the FAC, other than her contention that all her payments were timely, to show that Defendant failed to investigate the disputed amounts.

Finally, Plaintiff has cured some of the deficiencies under Rule 8(a) that the Court noted in its prior order, as she has provided her address and a copy of the HAMP modification.

However, Plaintiff has again failed to provide the terms of the original mortgage and other facts which would put Defendant and the Court on notice as to her claims.

Because Plaintiff has failed to state a claim upon which relief may be granted, Defendant's Motion to Dismiss is granted as to this claim.

### B.  State Law Claims

Having dismissed Plaintiff's federal claim, the Court determines that the FAC presents no basis for federal question jurisdiction or for diversity jurisdiction.  28 U.S.C. §§ 1331, 1332.  The Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c).  Plaintiff's remaining claims are therefore dismissed as moot.

### CONCLUSION

As a matter of law, and for the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint is GRANTED with leave to amend.  Plaintiff shall file any amended complaint within twenty (20) days of the date this Order is filed electronically.  If no amended complaint is filed within said twenty (20)-day period, without further notice to the parties, the causes of action dismissed by virtue of this Memorandum and Order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated: October 19, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE