UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDE DARRIN, individually, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, & TRANSUNION LLC,<br><br>Defendants. | No. 2:12-cv-00228-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

On November 12, 2012, Jude Darrin ("Plaintiff") filed a Second Amended Complaint ("SAC") against Bank of America ("BoA"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and TransUnion LLC ("TransUnion") (collectively referred to as "Defendants").[1] (ECF No. 23.)

///

///

///

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

Plaintiff alleges the following causes of actions against BoA: (1) violations to the Fair Credit Reporting Act 15 U.S.C § 1681s-2(b); (2) violations to the California Consumer Credit Reporting Agencies Act; (3) violations to the California Rosenthal Act; (4) violations to the California Consumers Legal Remedies Act; (5) violations to the California Business and Professions Code § 17200; (6) Defamation; and (7) Conversion. Id. Plaintiff alleges that Equifax, Experian and TransUnion violated: (1) the Fair Credit Reporting Act 15 U.S.C. § 1681e(b); (2) the Fair Credit Reporting Act 15 U.S.C. §1681(i); (3) the California Business and Professions Code § 17200; and (4) Defamation. Id. On November 29, 2012, BoA filed a Motion to Dismiss. (ECF No. 25.) On January 3, 2013, TransUnion filed a Motion to Dismiss. (ECF No. 41.) Equifax filed a Motion for Judgment on the Pleadings and joined TransUnion's Motion to Dismiss on January 24, 2013. (ECF No. 48.) On January 31, 2013, Experian filed a Motion to Join TransUnion's Motion to Dismiss. (ECF No. 53.) For the reasons discussed below, BoA's Motion is GRANTED in part and DENIED in part. (ECF No. 25.) For the reasons discussed below, TransUnion's, Equifax's, and Experian's Motions are GRANTED. (ECF Nos. 41, 48 and 53.)

## BACKGROUND[2]

In May 2004, Plaintiff refinanced her home loan mortgage through Countrywide. Plaintiff's monthly payments were due the first of each month. The refinancing terms stated that Countrywide would assess late charges against Plaintiff if her full payment was not received by the end of the fifteenth calendar day after the first day of the month. Until July 2007, Plaintiff paid $910.18 monthly, but after July 2007 her payment fluctuated. In July 2009, Plaintiff's payment was set at $1058.49. Later, BoA took over the loan from Countrywide.

///

---

[2] Unless specified otherwise, the facts in this section are from Plaintiff's SAC. (ECF No. 23.)

In September 2009, Plaintiff learned that her monthly payment would increase to $1366.89 in October 2009. On September 30, 2009, Plaintiff called BoA and spoke with "Vlad," a BoA employee. Plaintiff told Vlad that she would be unable to make the higher mortgage payment. During their September 2009 conversation, Vlad told Plaintiff that she might qualify for a loan modification and that she should make an $800.56 payment in November 2009. Thus, in November 2009 Plaintiff sent BoA a check for $800.56.

Meanwhile, in October 2009, Plaintiff applied for a loan modification though the government-sponsored Home Affordable Modification Program ("HAMP"). In response to her application, BoA wrote Plaintiff and told her to stop making her existing mortgage payment of $808.52 and instead to pay $675.87 starting December 4, 2009. Plaintiff submitted her $675.87 payment for December, and BoA posted it on December 11, 2009.

On December 29, 2009, Plaintiff signed the HAMP Trial Period Plan and agreed to pay BoA $675.87 in January 2010, February 2010 and March 2010. The payment coupons that accompanied the loan stated that Plaintiff's payment would be considered on time if the payment was received no later than the fifteenth day after the first of each month. Plaintiff made her January 2010, February 2010 and March 2010 payments on time. BoA did not contact Plaintiff about her April 2010 payment. As a precautionary measure, Plaintiff paid BoA $675.87, which BoA posted to her account on March 29, 2010.

On April 1, 2010, Plaintiff received a letter from BoA informing her that BoA approved Plaintiff for a permanent loan modification, that the new monthly payment was set at $790.10, and that she should not make her April 2010 payment. BoA and Plaintiff finalized the loan modification on May 28, 2010. Plaintiff called BoA and again spoke with Vlad about the loan modification. Plaintiff informed Vlad that she made her April 2010 payment before receiving BoA's instructions not to make the payment. Vlad explained that BoA would put her April 2010 payment towards Plaintiff's May 2010 payment.

Vlad directed Plaintiff to pay the difference between the old payment amount ($675.87) and the new amount ($790.10) to satisfy her May 2010 obligations. Plaintiff mailed the difference ($114.23), which BoA posted on May 3, 2010.

After May 2010, Plaintiff's monthly mortgage amount changed each month. Each month, Plaintiff waited for BoA to inform her of the amount she owed. After receiving the amount, Plaintiff mailed the payment before the fifteenth of each month. BoA posted Plaintiff's June 2010 - September 2011 payments before the fifteenth of each month.

In September 2011, Plaintiff put an offer on a house and it was accepted pending financing. At that time, Plaintiff discovered that BoA was reporting her mortgage payments as late, specifically, that it reported her November 2009, December 2009, January 2010, February 2010, March 2010, May 2010, September 2010 and June 2011 payments as late. BoA's reporting surprised Plaintiff because BoA never charged Plaintiff a late fee or notified Plaintiff that she was late. In April 2010, Plaintiff received a "pay for performance" credit because her payments had been so timely.

In September 2011, Plaintiff wrote BoA and requested that it correct the information it provided Experian, Equifax and TransUnion about her late payment history. Plaintiff also contacted Experian, Equifax and TransUnion about correcting the erroneous information. Experian, Equifax and TransUnion investigated the dispute and forwarded the information they received from Plaintiff to BoA along with a Consumer Dispute Verification Form. BoA verified the late payment history. Experian, Equifax and TransUnion informed Plaintiff that they would not change the information on Plaintiff's credit report because BoA verified it as correct.

In October 2011, Plaintiff asked Defendants to reinvestigate her claim. Experian, Equifax and TransUnion sent BoA a new Consumer Dispute Verification Form. Again, BoA verified the late payment history. In November 2011, Equifax, TransUnion and Experian informed Plaintiff that they would not change the untimely payments on her credit report as BoA confirmed its accuracy.

///

4

Plaintiff was unable to buy the home she bid on in September 2011 because of the payment history BoA reported to the credit reporting agencies.  In January 2012, BoA sent Plaintiff a "Notice of Intent to Accelerate" and informed Plaintiff that she could cure the default if she paid $1,617.04 on or before February 16, 2012.  Plaintiff sent BoA a check on January 26, 2012.  On or about February 2, 2012, Plaintiff received a letter from BoA stating that BOA had contacted Experian, Equifax and TransUnion and informed the agencies that the November 2009, December 2009, January 2010, February 2010, March 2010 and April 2010 payments were timely.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)[3], all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal citations, brackets and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).   "Factual allegations must be enough to raise a right to relief above the speculative level."

///

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

5

1  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal
2  Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain
3  something more than "a statement of facts that merely creates a suspicion [of] a legally
4  cognizable right of action.")).
5       Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket
6  assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and
7  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard
8  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of
9  the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles
10 Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough
11 facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . .
12 have not nudged their claims across the line from conceivable to plausible, their
13 complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed
14 even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a
15 recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.
16 232, 236 (1974)).

## BANK OF AMERICA

### A. Violations of the Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b)

21      Plaintiff's first cause of action alleges that BoA violated the Fair Credit Reporting
22 Act ("FCRA"), 15 U.S.C. § 1681s-2(b), by failing and refusing to investigate or
23 reinvestigate the disputed payment information after the credit reporting agencies
24 notified Defendant of the disputes.  Plaintiff contends that BoA was obligated to conduct
25 a reasonable, timely and thorough reinvestigation of the disputed amounts but failed to
26 do so, thereby causing Plaintiff to lose the home she bid on in September 2011.
27 ///
28 ///

The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit." 15 U.S.C. § 1681(b) (2006). Section 1681s-2 states that companies shall not furnish information about a consumer to a credit reporting agency if they have reason to know, or do know, that the information is false. 15 U.S.C. § 1681s-2(a)-(b) (2006).

BoA argues that Plaintiff has failed to state a claim because Plaintiff's SAC alleges that BoA's reporting was accurate, that Defendant did not have reason to know its reporting was false, and that Defendant properly investigated the disputed amounts. (ECF No. 25.) BoA's argument is unpersuasive. In Plaintiff's SAC, Plaintiff alleges facts that BoA knew or should have known that the information it reported about the November 2009, December 2009, April 2010 and May 2010 payments to Equifax, Experian and TransUnion was inaccurate.

In September 2009, a BoA customer advocate, Vlad, advised Plaintiff that she might qualify for the HAMP. (ECF No. 23.) That fall, Plaintiff applied for the HAMP. In October 2009, BoA wrote Plaintiff and directed her to stop making her existing mortgage payments until the parties completed the HAMP paperwork. Id. Plaintiff alleges that she did not make the November 2009 payment in reliance on BoA's letter. The parties signed the HAMP paperwork on December 29, 2009. Again, Plaintiff alleges that she did not make the December 2009 payment in reliance on BoA's letter. The HAMP trial required Plaintiff to make three payments of $675.87 in January 2010, February 2010 and March 2010. Id. It also required perfect compliance in order to qualify for the permanent loan modification. At the end of March 2010, Plaintiff made a $675.87 payment for April. BoA posted the payment on March 29, 2010. Then, in a letter dated April 1, 2010, BoA informed Plaintiff that she qualified for a permanent loan modification, but her payment would rise to $790.10 each month. In the same letter, BoA directed Plaintiff not to make her April 2010 payment. Because Plaintiff made her April 2010 payment before receiving the letter, Plaintiff contacted Vlad, the customer advocate.

///

1  Vlad told Plaintiff that BoA would consider her April 2010 payment as portion of her May
2  2010 payment.  Id.  Vlad directed Plaintiff to pay the difference between the old amount
3  ($675.87) and new amount ($790.10) for May 2010.  BoA posted the remaining portion
4  of Plaintiff's May 2010 on May 3, 2010.  Id.  Thus, Plaintiff alleges facts that Plaintiff
5  complied with each and every BoA instruction.  It is unreasonable for BoA to argue that
6  Plaintiff's payments were untimely or incomplete if Plaintiff followed the instructions
7  BoA's representatives and letters provided.
8       Experian, Equifax and TransUnion informed BoA about the disputes Plaintiff filed
9  in September 2011 and October 2011.  Each agency forwarded all of Plaintiffs'
10  correspondence to BoA along with a dispute notification form.  In both instances, BoA
11  verified the untimely payments.  Plaintiff has pleaded enough facts to state a claim upon
12  which relief may be granted.  If BoA had led a "reasonable" investigation into this
13  dispute, its own correspondence to Plaintiff would have made it clear that Plaintiff paid
14  BoA as it directed her to do so.
15       Because Plaintiff states a claim upon which relief may be granted, BoA's Motion
16  to Dismiss is DENIED as to this claim.
17
18       **B.**      **Violations to the California Consumer Credit Reporting Agencies Act**
19
20       The California Consumer Credit Reporting Agencies Act, as codified at California
21  Civil Code section 1785.25(a) et seq. ("CCRAA"), provides in pertinent part that "[a]
22  person shall not furnish information on a specific transaction or experience to any
23  consumer credit reporting agency if the person knows or should have known the
24  information is incomplete or inaccurate."  BoA argues that the Court should dismiss
25  Plaintiff's CCRAA claim because Plaintiff cannot show that Defendant furnished
26  information which it knew or had reason to know was incomplete or inaccurate by failing
27  to notify her about negative information.
28  ///

BoA argues that the information it reported regarding the Plaintiff's November 2009, December 2009, April 2010 and May 2010 payments was accurate.

This state action is analogous to the FCRA. Based on the same reasoning detailed above, BoA's Motion to Dismiss Plaintiff's CCRAA claim is DENIED.

**C.     Violations of California's Rosenthal Fair Debt Collection Practices Act**

The Rosenthal Fair Debt Collection Practices Act ("RFDCPA") was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. Plaintiff alleges that BoA repeatedly made false reports to credit reporting agencies about Plaintiff's credit standing and falsely stated Plaintiff's payment history.

Based on the language of the statute, courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA. See Cal. Civ. Code § 1788.2(e)-(f); Castaneda v. Saxon Mortg. Services, Inc., No. 2:09cv01124, 2009 WL 4640673, at *3 (E.D. Cal. Dec. 3, 2009) (holding that a foreclosure pursuant to a deed of trust does not constitute a debt collection under the RFDCPA); Pittman v. Barclays Capital Real Estate, Inc., No. 09CV0241, 2009 WL 1108889, at *3 (S.D. Cal. April 24, 2009) (dismissing plaintiff's mortgage-related RDFCPA claim for failing to "invoke statutory protections"); Ines v. Countrywide Home Loans, Inc., No. 08cv1267, 2008 WL 4791863, at *3 (S.D. Cal. 2008) (stating plaintiff's mortgage debt claim did not fall within the meaning of the RFDCPA).

The behavior Plaintiff complains of arises out of or exists in connection to her residential mortgage loan. As the courts have repeatedly held, the collection of this debt does not fall under the purview of the RFDCPA. Thus, BoA's Motion to Dismiss Plaintiff's RFDCPA claim is GRANTED.

///

9

### D. Violations of California's Consumer Legal Remedies Act

California's Consumer Legal Remedies Act ('CLRA') prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The CLRA defines goods as "tangible chattels bought or leased for use primarily for personal, family, or household purchases . . . ." Cal. Civ. Code § 1761(a). BoA argues this action is inapplicable to this case because the behavior Plaintiff complains of arises out of or exists in connection to a residential mortgage. (ECF No. 25.) The Court agrees as other courts have repeatedly declined to interpret "mortgage loan transactions" to meet CLRA's goods or services requirement. See McKell v. Washington Mutual, Inc. 142 Cal. App. 4th 1457, 1488 (2006) and T.C. Jefferson v. Chase Home Finance LLC, No. C06-6510 TEH, 2007 WL 1302984, at *2 (N.D. Cal. May 3, 2007).

Because Plaintiff's claim is based on BoA's misreporting of a residential loan mortgage, a CLRA action is inappropriate. BoA's Motion to Dismiss Plaintiff's CLRA claim is GRANTED.

### E. Violations of California Business and Professions Code § 17200

California's Business and Professions Code sections 17200-17210, commonly known as the Unfair Competition Law ("UCL"), defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200-17210. "Unlawful" practices are practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulation, or court-made." Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994) (citing People v. McKale, 25 Cal. 3d 626, 632 (1979)). To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. McKale, 25 Cal. 3d at 635.

///

10

A business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition." Cel-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). To sufficiently plead an action based on an "unfair" business act or practice, a plaintiff must allege facts showing the "unfair" nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have. Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980).

A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. Hall v. Time, Inc., 158 Cal. App. 4th 847, 849 (2008); Olsen, 48 Cal .App. 4th at 618 ("does not refer to the common law tort of fraud but only requires a showing [that] members of the public 'are likely to be deceived'"). Thus, in order to state a cause of action based on a "fraudulent" business act or practice, the plaintiff must allege that consumers are likely to be deceived by the defendant's conduct. Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 212 (1983).

Furthermore, a plaintiff alleging unfair business practices under section 17200 "must state with reasonable particularity the facts supporting the statutory elements of the violation. Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993).

In alleging a violation of the UCL, Plaintiff incorporates by reference all prior causes of actions. The Court is dismissing some, but not all, of Plaintiff's causes of actions; thus, Plaintiff may be able to establish the predicate "unlawful" action underlying the UCL claim. BoA's Motion to Dismiss Plaintiff's UCL cause of action is DENIED.

### F.     Defamation

The basis for a state law defamation action in this case is that BoA provided inaccurate information about Plaintiff's credit history to Equifax, TransUnion and Experian. Defamation may be based on either libel or slander in California.

11

Woods v. Protection One Alarm Monitoring, Inc., 628 F. Supp. 2d 1173, 1187 (E.D. Cal. 2007).

> Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

Id.

BoA argues that Plaintiff's defamation claim fails because BoA provided the credit reporting agencies with true and accurate information. Whether BoA reported accurate information is material to this case and it cannot be ascertained at this early stage; however, Plaintiff has pleaded enough facts to state a cause of action upon which relief may be granted. BoA's Motion to Dismiss Plaintiff's Defamation claim is DENIED.

**G.     Conversion**

Plaintiff's final cause of action against BoA is an allegation of conversion pursuant to California Civil Code section 3336. Under California law, a Plaintiff must show the following elements to establish conversion: (1) ownership or right to possession of property; (2) wrongful disposition of the property right; and (3) damages. Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003).

Plaintiff has failed to establish that BoA "wrongfully" dispossessed Plaintiff of $1,617.04. Plaintiff's SAC describes Plaintiff voluntarily paying BoA the sum. (ECF No. 23.) Further, California law does not provide for a conversion action where there is "a contractual right of payment." Ortega v. Toyota Motor Sales, USA, Inc., 572 F. Supp. 2d 1218, 1220 (S.D. Cal. 2008). Because Plaintiff owed BoA money because the parties entered into home mortgage loan contract, an action for conversion in this instance is legally unsound. BoA's Motion to Dismiss Plaintiff's Conversion action is GRANTED.

///
///

**EQUIFAX, TRANSUNION, AND EXPERIAN**

**A.   Violations of the Fair Credit Reporting Act 15 U.S.C. § 1681e(b)**

Congress intended the FCRA to protect consumers from credit reporting agencies spreading inaccurate information about their credit history by requiring credit reporting agencies to collect accurate, relevant and current information in a confidential and responsible manner. Guimond v. TransUnion Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (quoting St. Paul Guardian Ins. Co. v. Johnson, 884 F.2d 881, 883 (5th Cir. 1989). Section 1681e(b) of the Act states: "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The Ninth Circuit has explained that liability under "§ 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." Guimond, 45 F.3d 1329 at 1333.

Carvalho v. Equifax Information Services, 588 F. Supp. 2d 1089 (N.D. Cal. 2008), is instructive in this instance. In Carvalho, a creditor and a consumer were engaged in a dispute about the validity of a debt which "could only be resolved by a court of law." Id. at 1097. The Court explained that credit reporting agencies are "neither qualified nor obligated to resolve" legitimacy of debt disputes between creditors and consumers. Id. at 1098. Actions, like the one at hand, have crossed the line from factual deficiencies to "collateral attacks." Id. In this case, the actual dispute is with BoA. The FRCA does not permit consumers to sue credit reporting agencies as another way to "collateral[ly] attack" a creditor. Id. at 1098-99.

In this case, there is no evidence that the information Equifax, TransUnion or Experian reported was inaccurate at the time it reported the adverse reports. Plaintiff and BoA disputed the accuracy of the underlying credit information. BoA repeatedly confirmed the negative credit history's accuracy.

///

In September 2011, Plaintiff notified Equifax, TransUnion and Experian that the information each agency was reporting from BoA was inaccurate. Within the month, each of the credit reporting agencies investigated the dispute and contacted BoA about the information. BoA verified the information as accurate. A month later, in October 2011, Plaintiff disputed the information again. Each agency reinvestigated the information and recontacted BoA about the possible inaccuracies. Again, BoA confirmed the information it gave the credit reporting agencies about Plaintiff's credit as accurate. Plaintiff's own complaint describes each credit reporting agency's response to her contention as extremely responsive. (ECF No. 47.)

Equifax's, TransUnion's and Experian's Motion to Dismiss Plaintiff's FCRA action is GRANTED with prejudice.

**B.      Violations of the Fair Credit Reporting Act 15 U.S.C. § 1681(i)**

Section 1681i governs how credit reporting agencies should govern reinvestigations of disputed credit information. A prima facie showing under § 1681i consists of the following elements: (1) plaintiff's credit file contains inaccurate or incomplete information; (2) plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information; (3) plaintiff's dispute is not frivolous or irrelevant; (4) the credit reporting agency failed to respond to plaintiff's dispute; (5) the failure to reinvestigate caused plaintiff to suffer damages; (6) actual damages, such as damages caused by humiliation, mental distress, or injury to reputation or creditworthiness, resulted to plaintiff. Thomas v. TransUnion, LLC, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002).

As explained above, Plaintiff's own Complaint describes each credit reporting agency's response to her contention that the BoA information was inaccurate as extremely responsive. (ECF No. 47.) All three credit reporting agencies reinvestigated Plaintiff's claim within one month of the original complaint about the BoA information.

14

In both investigations, each agency contacted BoA after the alleged inaccurate information. In both September and October 2011, BoA confirmed the information it provided the agencies about Plaintiff was accurate. Thus, Plaintiff has failed to present facts that TransUnion, Experian, or Equifax "failed to respond" or "failed to reinvestigate" the dispute. Plaintiff's complaint presents facts that defeat its own action.

Equifax's, TransUnion's and Experian's Motion to Dismiss Plaintiff's FCRA action is GRANTED with prejudice.

### C.   Remaining State Claims Against Equifax, TransUnion, and Experian

Having dismissed Plaintiff's federal claims against TransUnion, Equifax and Experian, the Court determines that the SAC presents no basis for federal question jurisdiction or for diversity jurisdiction. 28 U.S.C. §§ 1331, 1332 (2006). The Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c). Plaintiff's UCL and Defamation causes of action against TransUnion, Equifax and Experian are DISMISSED as moot.

## CONCLUSION

For the foregoing reasons, BoA's Motion to Dismiss is GRANTED in part and DENIED in part without leave to amend. (ECF No. 25.) BoA's Motion to Dismiss Plaintiff's RFDCPA, CCLRA, and Conversion actions is GRANTED with prejudice. (ECF No. 25.) BoA's Motion to Dismiss Plaintiff's FRCA, CCRAA, UCL, Defamation actions is DENIED. (ECF No. 25.) The Court orders BoA to answer Plaintiff's Complaint within twenty-one days of this Order.

///

///

///

1    For the reasons discussed above, the motions of TransUnion, Equifax and
2 Experian are GRANTED (ECF Nos. 41, 48 and 53) with prejudice.  Because the Court is
3 granting Equifax's Motion to Dismiss with prejudice, the Court need not rule on its
4 Motion for Judgment as it is now moot.  (ECF No. 48.)  The Clerk of the Court is directed
5 to the close this case as it relates to TransUnion, Equifax and Experian.
6    IT IS SO ORDERED.
7 Dated:    March 6, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE