1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   JUDE DARRIN, individually, and on          No.  2:12-cv-00228-MCE-KJN
     behalf of the general public,
12
                 Plaintiff,
13                                              **MEMORANDUM AND ORDER**
           v.
14
     BANK OF AMERICA, N.A., EXPERIAN
15   INFORMATION SOLUTIONS, INC.,
     EQUIFAX INFORMATION SOLUTION
16   SERVICES, LLC, and TRANSUNION
     LLC,
17
                 Defendants.
18

19          Plaintiff Jude Darrin ("Plaintiff") brought this action on January 28, 2012, alleging

20   violations of state and federal law by Defendant Bank of America, N.A. ("Bank of

21   America").  The claims arise from Plaintiff's attempts to refinance her mortgage and

22   purchase a new home.  On July 9, 2012, the Court granted Bank of America's motion to

23   dismiss Plaintiff's original Complaint pursuant to Federal Rule of Civil Procedure

24   12(b)(6).  ECF No. 14.  Plaintiff then filed a First Amended Complaint, ECF No. 15,

25   which Defendant Bank of America again moved to dismiss, ECF No. 16.  The Court

26   granted Bank of America's Motion on October 22, 2012.  ECF No. 21.

27          On November 12, 2012, Plaintiff filed a Second Amended Complaint, which

28   named Experian Information Solutions, Inc. ("Experian"), Equifax Information Solution

                                                1

1  Services, LLC ("Equifax"), and Transunion LLC ("Transunion") as Defendants

2  (collectively, "the Credit Reporting Agency Defendants" or "the CRA Defendants").  On

3  November 29, 2012, Bank of America again moved to dismiss; Transunion filed a Motion

4  to Dismiss on January 3, 2013, which Experian joined.  ECF Nos. 25, 41, 42.  Equifax

5  filed a motion for judgment on the pleadings.  ECF No. 48.  On March 7, 2013, the Court

6  issued an order granting in part and denying in part Bank of America's motion, and

7  granting Experian, Equifax, and Transunion's motions with prejudice.  ECF No. 58.

8      Ten months later, Plaintiff filed a motion for reconsideration of the Court's decision

9  regarding Experian, Equifax, and Transunion's motions, which is presently pending

10  before this Court.  ECF No. 83.  On February 6, 2014, Plaintiff dismissed Bank of

11  America from the case with prejudice.  Transunion opposed the present motion, ECF

12  No. 89, and Experian and Equifax joined the opposition, ECF Nos. 90, 92.  For the

13  reasons set forth below, Plaintiff's Motion for Reconsideration is GRANTED IN PART

14  AND DENIED IN PART.[1]

15

16                              **BACKGROUND**

17

18      On May 14, 2004, Plaintiff refinanced her home mortgage through Countrywide.

19  Pursuant to the terms of Plaintiff's new Note, Plaintiff's monthly mortgage payment was

20  fixed at $910.18 for three years.  On or about July 10, 2007, Plaintiff's payment adjusted

21  and increased to $1044.71.  Around January 1, 2008, Plaintiff's payment adjusted and

22  increased to $1186.64.  On July 1, 2008, Plaintiff's payment again adjusted and

23  decreased to $1068.64.  On January 1, 2009, Plaintiff's payment adjusted and increased

24  to $1197.28.  Finally, in July 2009, Plaintiff's payment adjusted and decreased to

25  $1059.49.

26  ///

27  _____

28      [1] Because oral argument would not be of material assistance, the Court ordered this matter
    submitted on the briefs.  E.D. Cal. Local R. 230(g).

                                        2

In September 2009, Plaintiff received a payment coupon from Bank of America informing her that her mortgage payment would be increased to $1,366.89 as of October 2009.  Prior to receiving that notice, however, Plaintiff made her regular October mortgage payment of $1,058.49.  This payment posted on October 15, 2009.  On September 20, 2009, Plaintiff called the customer service number printed on her payment coupon from Bank of America.  Plaintiff spoke with a Bank of America employee named Vlad.  Plaintiff explained to Vlad that Bank of America had untimely increased her mortgage payments, and that she had already made her October 2009 payment.  Plaintiff also expressed concern at her ability to make the higher mortgage payment.  Vlad informed Plaintiff that she might qualify for a loan modification, and told Plaintiff that she only needed to pay $800.56 for her November mortgage payment.  However, when Plaintiff sent Bank of America a check for $800.56 as her November 2009 payment, Bank of America posted the amount to her account as a miscellaneous payment.

In October 2009, Plaintiff applied for a loan modification through the government-sponsored HAMP program.  Plaintiff's application was directed to Bank of America for processing.  On December 4, 2009, Plaintiff received a letter from Bank of America directing Plaintiff to stop making her existing mortgage payment of $808.52 and to instead pay $675.87 beginning on that date.  On December 7, 2009, Plaintiff made a payment of $675.87 to Bank of America.  Bank of America posted this payment to Plaintiff's account as a miscellaneous payment on December 11, 2009.

On December 29, 2009, Plaintiff received the HAMP Plan Agreement ("the Agreement") from Bank of America, which became effective January 1, 2010.  Plaintiff signed the Agreement that same day.  Under the terms of the Agreement, Plaintiff was to pay Bank of America $675.87 for the months of January 2010, February 2010 and March 2010.

///

///

3

1    Plaintiff's January 2010 payment of $675.87 posted to her account as a

2  miscellaneous payment on December 28, 2009.  Plaintiff's February 2010 payment of

3  $675.87 posted to her account as a miscellaneous payment on February 3, 2010.

4  Plaintiff's March 2010 payment of $675.87 posted to Plaintiff's account as a

5  miscellaneous payment on March 1, 2010.

6    As of April 1, 2010, Plaintiff had not heard from Bank of America about receiving a

7  permanent modification.  Plaintiff therefore sent a payment of $675.87 for the month of

8  April 2010, which posted to her account as a miscellaneous payment on March 29,

9  2010.  Several days later, Plaintiff received a letter from Bank of America dated April 1,

10  2010, informing Plaintiff that she had been approved for a permanent home modification

11  and that Plaintiff's trial plan was extended an additional month.  Plaintiff's modified

12  monthly payment was set to begin at $790.10.  Bank of America instructed Plaintiff not to

13  make her April 2010 payment, and further informed Plaintiff that the modification would

14  become permanent as of May 1, 2010, if Bank of America received a signed and

15  notarized agreement by April 11, 2010.  Plaintiff signed the Permanent Modification in

16  front of a Notary Public on April 8, 2010, and mailed it via certified mail the next day.

17  Bank of America signed the Permanent Modification Agreement on or about May 28,

18  2010.

19    Plaintiff applied for a loan modification with Bank of America through the

20  government sponsored HAMP program, which was later approved by Bank of America.

21  On or about September 14, 2011, Plaintiff checked her credit reports from the CRA

22  Defendants.  Plaintiff discovered that Bank of America had reported her mortgage late by

23  thirty days for June 2011, May 2010 through September 2010, and November 2009,

24  sixty days late for December 2009, ninety days late for January 2010 and March 2010,

25  and one hundred twenty days late for February 2010.

26  ///

27  ///

28  ///

4

1

2

**STANDARD**

3      "Rule 60 . . . of the Federal Rules of Civil Procedure provides in pertinent part: On

4   motion and upon such terms as are just, the court may relieve a party or his legal

5   representative from a final judgment, order, or proceeding for the following reasons:

6   (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

7   evidence, which by due diligence could not have been discovered in time to move for a

8   new trial under Rule 59(b); . . . or (6) any other reason justifying relief from the operation

9   of the judgment.  The motion shall be made within a reasonable time, and for reasons

10  (1), (2), and (3) not more than one year after the judgment, order, or proceeding was

11  entered or taken.'" Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 606 (7th Cir. 1986)

12  (quoting Fed. R. Civ. P. 60(b)).

13              Pursuant to Local Rules, a motion for reconsideration must
             set forth the material facts and circumstances surrounding
14           the motion, including: (1) what new or different facts or
             circumstances are claimed to exist which did not exist or
15           were not shown upon such prior motion, or what other
             grounds exist for the motion and (2) why the facts or
16           circumstances were not shown at the time of the prior motion.

17  Pfitzer v. Beneficial Cal., Inc., 2:09-CV-02634-MCE, 2010 WL 3220132 (E.D. Cal.

18  Aug. 13, 2010) (citing E.D. Cal. L.R. 230(j)).

19

20                                      **ANALYSIS**

21

22      Here, Plaintiff contends that the motion for reconsideration should be granted on

23  two grounds: (1) there is newly discovered evidence; and (2) the Court's previous order

24  applied an incorrect standard.  Defendants object that the Motion is untimely, that the

25  newly discovered evidence does not change the outcome of the case, and that the

26  Court's previous order applied the correct standard.

27  ///

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Timing

While Rule 60(c)(1) states that "the motion shall be made within a reasonable time, and for reasons [set forth in Rule 60(b)] (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken," courts have held that "the one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even though the one-year period has not expired." Kagan, 795 F.2d at 610 (quoting 232 Wright & Miller, Federal Practice and Procedure § 2866 (3d ed.)) (citing Bank of Cal. v. Arthur Andersen & Co., 709 F.2d 1174 (7th Cir. 1983)); see also Thompson v. Paul, CIV-05-0990-PHXMHM, 2007 WL 973975 (D. Ariz. Mar. 30, 2007)("Plaintiffs ignore that a Rule 60(b)(2) or (3) motion must be filed within a 'reasonable time' period, not simply filed within one year of the Court's judgment).  There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable." Id. (citing Sudeikis v. Chi. Trans. Auth., 774 F.2d 766, 769 (7th Cir. 1985)).  "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties." Id. (citing Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981)).

Here, the "newly discovered evidence" which Plaintiff contends show Defendants violated 15 U.S.C. § 1681i was made available to Plaintiff on May 17, 2013, by Defendant Transunion in response to a subpoena requesting all communication between Bank of America and Transunion regarding Plaintiff's disputed account.  Accordingly, Plaintiff knew of the "newly discovered evidence" eight months prior to bringing the Motion.  Additionally, while Plaintiff correctly asserts that the Court previously applied an incorrect standard, Plaintiff was aware of that error the day the Court's order issued— March 7, 2013.  Plaintiff therefore waited over ten months to file the instant Motion.
///

6

Eight months is an exceptionally long delay to bring new evidence to the Court's attention.  Likewise, waiting ten months to raise the issue of legal error tests the limits of what constitutes a "reasonable time."  However, in light of the Court's previous legal errors, and the fact that ten months is not per se an unreasonable amount of time to wait to seek reconsideration, the instant Motion is not time barred.  The Court will thus address each of these issues on the merits, below.

## B.    Newly Discovered Evidence

"Relief from final judgment on the basis of newly discovered evidence under Rule 60(b)(2) 'is warranted if (1) the moving party can show the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case.'"  PageMasters, Inc. v. Oce-Technologies, B.V., CIV. 05-1519-PHX RCB, 2007 WL 2696854 (D. Ariz. Sept. 12, 2007) (citing Immersion Corp. v. Sony Comp. Ent. Am., Inc., 2006 WL 618599, at *15 (N.D. Cal. March 8, 2006); Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003)).

Plaintiff argues that

> [t]he Court's order was premised upon the facts known at the time the [Second Amended Complaint] was filed.  In the [Second Amended Complaint], [Plaintiff] had alleged that [the CRA Defendants], upon receipt of [Plaintiff's] disputes, had forwarded to Defendant Bank of America [ ] all of her written documentation, including her letters explaining why the reported information was inaccurate. . . .  However, subsequent information has come to light which shows that none of the [CRA Defendants] sent [Bank of America] any of the actual dispute information or documents provided by Darrin to the [CRA Defendants] and that the only reinvestigation of [Plaintiff's] disputes by the [CRA Defendants] was to engage in the ACDV process with [Bank of America] and thus rely solely on [Bank of America's] responses to the ACDVs.

ECF No. 83 at 1.  Defendants dispute that this evidence is in fact "new" and that it could not have been discovered through Plaintiff's due diligence.  ECF No. 89 at 7.

///

7

1    Plaintiff states that in June 2013, Plaintiff discovered new facts that were not

2    contained within her Second Amended Complaint.  ECF No. 83 at 4-5.  However,

3    evidence is not newly discovered if it was already in the party's possession or could have

4    been discovered with reasonable diligence.  See Feature Realty, 331 F.3d at 1093;

5    Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (9th Cir. 1994); Coastal Transfer Co., 833

6    F.2d at 212; Caliber One Indem. Co. v. Wade Cook Fin. Corp., 491 F.3d 1079, 1085 (9th

7    Cir. 2007).  While Plaintiff states that she in good faith relied on the CRA Defendants

8    having forwarded all information to Bank of America,  ECF No. 83 at 4, the standard

9    under Rule 60(b)(2) requires the evidence to not have been discoverable.  Whether or

10   not such reliance was in good faith as Plaintiff contends it was is irrelevant.  Plaintiff

11   does not contend that this evidence could not have been discovered through due

12   diligence.  As such, Plaintiff fails to establish that relief under Rule 60(b)(2) alone is

13   warranted.

14   **C.   Legal Error**

15   Plaintiff contends that this Court misconstrued or misapplied the legal standard

16   under the FCRA.  ECF No. 83 at 7-8; ECF No. 91 at 3, 6-7.  "A motion for

17   reconsideration is not a vehicle to reargue the motion or to present evidence which

18   should have been raised before."  United States v. Westlands Water Dist.,

19   134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (quoting Bermingham v. Sony Corp. of

20   Am., Inc., 820 F. Supp. 834, 856 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994).  "A

21   party seeking reconsideration must show more than a disagreement with the Court's

22   decision, and 'recapitulation of the cases and arguments considered by the court before

23   rendering its original decision fails to carry the moving party's burden.'"  Id. (quoting

24   Bermingham, 820 F. Supp. at 856-57).  "To succeed, a party must set forth facts or law

25   of a strongly convincing nature to induce the court to reverse its prior decision."  Id.

26   (citing Kern–Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656, 665 (E.D. Cal.

27   1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987)).

28   ///

1    For the reasons set forth below, it is clear that Plaintiff does not merely seek to

2  reargue the motion and shows more than a simple disagreement with the Court's

3  previous decision.  Rather, Plaintiff presents a meritorious argument that the Court's

4  prior decision applied incorrect legal standards.  Specifically, Plaintiff states that she

5  does not seek to collaterally attack Bank of America, and therefore the Court's previous

6  reliance on Carvalho, 629 F.3d 876 (9th Cir. 2010) is misplaced.  Plaintiff also

7  challenges the Court's previous § 1681i analysis due to an improperly limited standard.

8  Finally, Plaintiff requests reconsideration because she was not previously given leave to

9  amend her claims against the CRA Defendants.  Each argument is addressed in turn,

10  below.

11              **1.     Violations of 15 U.S.C. § 1681e(b)**

12    Under § 1681e(b), whenever a consumer reporting agency prepares a consumer

13  report, it must follow "reasonable procedures to assure maximum possible accuracy of

14  the information concerning the individual about whom the report relates."  15 U.S.C.

15  § 1681e(b).  The Ninth Circuit has explained that liability under "§ 1681e(b) is predicated

16  on the reasonableness of the credit reporting agency's procedures in obtaining credit

17  information."  Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th

18  Cir. 1995).  If a consumer's report contains an inaccuracy, the CRA who generated the

19  inaccurate report may be held liable only if it failed to follow reasonable procedures.  Id.

20  In Saenz v. Trans Union, LLC, the plaintiff brought suit against Transunion under both

21  § 1681e(b) and § 1681i.  621 F. Supp. 2d 1074, 1081 (D. Or. 2007).  The court found

22  that because Transunion was entitled to rely on facially credible information it had

23  received from Saenz' creditors, the court properly dismissed Saenz' § 1681e(b) claim.

24  Id.  Furthermore, Saenz found that compliance with § 1681e(b) and § 1681i are distinct

25  inquiries, since § 1681e(b) allows for a credit reporting agency to rely on information

26  received from a source that it reasonably believes to be reputable. Therefore, a CRA

27  does not violate § 1681e(b) simply by reporting information that may be inaccurate.  Id.

28  As, Saenz specifically notes: "If a consumer reporting agency accurately transcribes,

1    stores and communicates consumer information received from a source that it

2    reasonably believes to be reputable, and which is credible on its face, the agency does

3    not violate [§ 1681e(b)] simply by reporting an item of information that turns out to be

4    inaccurate."  Id. at 1081 (citing 16 C.F.R. 600, § 607.3(A)).

5          Plaintiff contends that she is not asking for the CRA Defendants to determine

6    whether the mortgage constitutes a legally enforceable debt, as the plaintiff did in

7    Carvalho.  Instead, according to Plaintiff, her case presents a "simple accounting

8    question."  ECF No. 91 at 7.  In Carvalho, a creditor and a consumer were engaged in a

9    dispute about the validity of a debt which "could only be resolved by a court of law."

10   629 F.3d at 1097.  The consumer had signed a billing agreement related to services

11   received for medical treatment.  Id. at 882.  The agreement provided that the consumer's

12   insurance would be billed first, but any unpaid balance after ninety days would become

13   the consumer's responsibility.  Id.  When the consumer's insurance failed to pay, the

14   medical services provider sought to hold the consumer responsible for the bill.  Despite

15   receiving the bill and a "final notice" from the medical services provider, the consumer

16   failed to pay the balance.  Id.  The debt was then assigned to a collection agency, who

17   reported the debt to the CRAs.  Id.  The consumer later disputed the debt because her

18   insurance had wrongfully failed to pay the bill.  Id.  When the consumer brought claims

19   for violations of the FCRA against the CRAs, the consumer did not dispute the accuracy

20   of the statements; rather, she disputed her obligation to pay the debt.  Id. at 891.  The

21   Ninth Circuit explained that credit reporting agencies are "neither qualified nor obligated

22   to resolve" legitimacy of debt disputes between creditors and consumers.  Id. at 1098.

23   As such, actions that cross the line from such factual deficiencies to "collateral attacks"

24   are not permitted under § 1681e(b).  Id.

25         Citing to Carvalho, this Court previously held that Plaintiff's § 1681e(b) claim

26   crossed the line and constituted a collateral attack on Bank of America.  However, upon

27   reconsideration, the Court finds that this determination was in error.  Plaintiff disputes the

28   ///

1   accuracy of the statements, and not simply her legal obligation to pay a debt.

2   Accordingly, Plaintiff is correct that <u>Carvalho</u> does not apply.

3        Plaintiff's § 1681e(b) claim nonetheless fails.  As set forth above, the correct legal

4   analysis under § 1681e(b) looks to whether the CRA relied on information received from

5   a source that it reasonably believes to be reputable.  <u>Saenz</u>, 621 F. Supp. 2d at 1081.

6   Here, Plaintiff presents no evidence demonstrating that the CRA Defendants would have

7   reason to believe that Bank of America was not a reputable source.  Moreover, the

8   information that Bank of America reported and that appeared in the CRA Defendants'

9   reports is not attributable to the CRA Defendants' § 1681e(b) procedures.  Rather, this

10  information is attributable to Bank of America, who provided this information to the CRA

11  Defendants.  Because reporting information that may be inaccurate does not violate

12  § 1681e(b) if such information is received via accuracy-assuring procedures, and

13  because there are no allegations in the record that the CRA Defendants' procedures

14  were unreasonable under § 1681e(b), Plaintiff's § 1681e(b) claim against the CRA

15  Defendants fails.

16       Thus, although Plaintiff is correct that the Court previously misapplied <u>Carvalho</u> in

17  denying Plaintiff's §1681e(b) claim, this claim nonetheless lacks merit.  Plaintiff's motion

18  to reconsider is therefore DENIED as to her § 1681e(b) claims against the CRA

19  Defendants.

20              **2.     Violations of 15 U.S.C. § 1681i**

21       Section 1681i governs the manner in which CRAs conduct reinvestigations of

22  disputed credit information.  Pursuant to § 1681i, a CRA must reasonably reinvestigate

23  an item in a consumer's credit file once the consumer directly notifies the agency of a

24  possible inaccuracy.  15 U.S.C. § 1681i(a)(1)(A).  This provision also requires a CRA to

25  review and consider all relevant information submitted by the consumer, promptly

26  provide the credit grantor of the disputed item with all relevant information regarding the

27  dispute.  <u>Id.</u> §§ 1681i(a)(2)(B), (a)(4).  A CRA is then required to promptly delete or

28  modify the item based on the results of the reinvestigation.  <u>Id.</u> § 1681i(a)(5)(A).  Thus, in

1    order to state a claim under § 1681i, Plaintiff must establish that: (1) her credit files

2    contained inaccurate or incomplete information; (2) she notified CRA Defendants directly

3    of the inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) and that the CRA

4    Defendants failed to respond to the dispute; and (5) this failure to reinvestigate caused

5    Plaintiff to suffer actual damages.  Thomas v. Trans Union, LLC, 197 F. Supp. 2d 1233,

6    1236 (D. Or. 2002) (citations omitted).

7            There is no serious dispute as to most of the elements of Plaintiff's § 1681i claim.

8    As noted above, Plaintiff's credit report contained inaccurate information about

9    completed mortgage payments, which Plaintiff thereafter disputed to the CRA

10   Defendants.  After the CRAs failed to correct the information, Plaintiff disputed her credit

11   reports a second time.  This Court previously found that

12                  all three credit reporting agencies reinvestigated Plaintiff's
13                  claim within one month of the original complaint about the
                    [Bank of America] information.  In both investigations, each
14                  agency contacted [Bank of America] after the alleged
                    inaccurate information.  In both September and October
15                  2011, [Bank of America] confirmed the information it provided
                    the agencies about Plaintiff was accurate.  Thus, Plaintiff has
16                  failed to present facts that Transunion, Experian, or Equifax
                    "failed to respond" or "failed to reinvestigate."

17   ECF No. 58 at 14-15.  The Court's prior order thus focused on the CRA Defendants'

18   failure to reinvestigate.

19           Plaintiff claims this analysis was incorrect, as under § 1681i liability can arise "if

20   there was no investigation at all, if there was an investigation that was not completed in

21   30 days, or if the manner of the investigation was not sufficient."  ECF No. 83 at 12.

22   Thus, according to Plaintiff, § 1681i required the CRAs to provide Bank of America "with

23   a copy of the cancelled checks and [Plaintiff's] dispute letters (or at least summarized

24   their contents)."  ECF No. 83 at 10.  Further, Plaintiff contends that because the CRA

25   Defendants not only relied solely on information provided by Bank of America in their

26   reinvestigation process, but also failed to send any of Darrin's documentation and failed

27   to describe Plaintiff's disputes to Bank of America "accurately or completely," the CRA

28   Defendants violated their obligations under the FCRA.  ECF No. 83 at 10-11.  In short,

1   Plaintiff asserts that the correct analysis requires an examination of whether the CRA

2   Defendants responded to Plaintiff's dispute in a reasonable manner.  ECF No. 83 at 13

3   (citing to Bradshaw v BAC Home Loan Servicing, LP, 816 F. Supp. 2d 1066, 1073

4   (D. Or. 2011)).

5          While Plaintiff is correct that liability can attach for failure to respond in a

6   reasonable manner, Plaintiff's Second Amended Complaint failed to allege facts

7   sufficient to state a claim for such a violation by Transunion, Experian, or Equifax.  The

8   Second Amended Complaint alleges only that "Experian responded to Plaintiff's Dispute

9   Letter and stated it could not use the information she had sent to it and that it would

10  contact Bank of America to verify the information."  ECF No. 23 at 12.  Plaintiff's Sixth

11  Claim for Relief against Experian merely reiterates the elements of § 1681i claim and

12  does not present any of the facts recited in Plaintiff's Motion.  ECF No. 23 at 28.  Plaintiff

13  did not include any allegations demonstrating that the other two CRAs violated § 1681i.

14  "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more

15  than labels and conclusions, and a formulaic recitation of the elements of a cause of

16  action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley

17  v. Gibson, 355 U.S. 41, 47 (1957)).  Based on these allegations, this Court reasonably

18  found that "all three credit reporting agencies reinvestigated Plaintiff's claim" as "each

19  agency contacted [Bank of America] after the alleged inaccurate information" and that

20  "[Bank of America] confirmed the information it provided the agencies about Plaintiff was

21  accurate."  ECF No. 58 at 14-15.

22         However, Plaintiff also raises a concern that the CRA Defendants relied

23  exclusively on an ACDV system in reinvestigating Plaintiff's dispute.  ECF No. 83 at 10.

24  Such reliance is problematic, as many courts "have concluded that where a CRA is

25  affirmatively on notice that information received from a creditor may be suspect, it is

26  unreasonable as a matter of law for the agency to simply verify the creditor's information

27  through the ACDV process without additional investigation."  Bradshaw v. BAC Home

28  Loans Servicing, LP, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011).  The Ninth Circuit

1  has not expressly ruled on whether reliance on an ACDV system is in itself reasonable

2  under § 1681i.  See Saenz, 621 F. Supp.2d at 1083.[2]

3      Although Plaintiff's Complaint contains no factual allegations showing that the

4  CRA Defendants' reinvestigation was insufficient,  Plaintiff's Motion for Reconsideration

5  states various allegations demonstrating how each CRA Defendant allegedly violated

6  § 1681i.  The majority of these facts are not pled in Plaintiff's Complaint.  The CRA

7  Defendants argue that if Plaintiff is given leave to amend, they will be unduly prejudiced.

8  However, the interests of justice weigh in favor of allowing Plaintiff leave to amend to

9  adequately allege these facts.  Although Plaintiff waited exceptionally long to seek

10  reconsideration, amendment is warranted in this situation, as Plaintiff was not previously

11  given an opportunity to amend her complaint, and because the Court's previous order

12  relied on an erroneous legal analysis under § 1681i.  For these reasons, the present

13  Motion is GRANTED as to Plaintiff's § 1681i claims against the CRA Defendants, and

14  Plaintiff is granted leave to amend this claim against the CRA Defendants.

15

16                              **CONCLUSION**

17

18      For the foregoing reasons, Plaintiff's Rule 60(b) Motion to Reconsider is DENIED

19  IN PART and GRANTED IN PART, as follows:

20      1.   The Motion to Reconsider Plaintiff's § 1681e(b) claims against the CRA

21           Defendants is DENIED.  These claims remain dismissed without leave to

22           amend.

23      2.   The Motion to Reconsider Plaintiff's § 1681i claims against the CRA

24           Defendants is GRANTED.  These claims remain dismissed, but Plaintiff is

25           granted leave to amend these claims as to the CRA Defendants.  An

26

27  [2] The Ninth Circuit has, however, found that a "CRA's 'reasonable reinvestigation' consists largely of triggering the investigation" of the credit furnisher.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d

28  1147, 1156 (9th Cir. 2009).  Here, according to the allegations contained in Plaintiff's Second Amended Complaint, the CRA Defendants did trigger an investigation by Bank of America.

amended complaint may be filed within twenty (20) days from the date of
this memorandum and order.   If no amended complaint is filed within said
twenty (20) day period, these claims shall be dismissed without leave to
amend without further notice to the parties.

IT IS SO ORDERED.

Dated:  May 13, 2014

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

15